UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BING LI, Individually and On Behalf of All others Similarly Situated,

*Plaintiffs*,

v.

AETERNA ZENTARIS, INC., *et al.*,

*Defendants*.

Civil Action No:
14-cv-7081 (PGS)(TJB)

MEMORANDUM
AND
ORDER

This matter returns to the Court on Defendant Aeterna Zentaris, Inc.'s motion to strike in part the declaration and opinions of Plaintiffs' expert, Dr. Adam Werner. (ECF No. 113). Plaintiffs respond, contending that, at this stage, the motion is premature. For the reasons discussed herein, Defendants' motion is denied.

### BACKGROUND

For purposes of this motion, the Court relies on the facts discussed in its February 28, 2018 Opinion granting Plaintiffs' motion for class certification. (ECF No. 144). The Court only adds that this case involves allegations of securities fraud based on certain public disclosures made by Aeterna beginning in August 30, 2011. In support of their motion for class certification, Plaintiffs attached the expert report of Dr. Adam Werner, who opines that, at all relevant times, Aeterna was traded in an open and efficient market. (ECF No. 104-4, "Werner Report" at ¶¶ 24-138). Although not asked to calculate damages, Werner also offers a method for which he would calculate damages suffered by the Class. Defendants now seek to strike that portion of the report, since it fails to consider alternative factors, which may have affected stock price. (ECF No. 113).

### LEGAL STANDARD

1

"Under the Federal Rules of Evidence, a trial judge acts as a 'gatekeeper' to ensure that 'any and all expert testimony or evidence is not only relevant, but also reliable.'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). When faced with a proffer of expert testimony under Federal Rule of Evidence 702, "the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell-Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda*, 520 F.3d at 244.

"Qualification refers to the requirement that the witness possess specialized expertise." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Rule 702's qualification requirements have been treated liberally and courts have held that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).

Next, the proffered testimony must be reliable; that is, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Id.* at 742 (quoting *Daubert*, 509 U.S. at 590. "[S]o long as the process or technique the expert used in formulating the opinion is reliable," such testimony will be deemed admissible. *Id.* Nevertheless, the Third Circuit has set forth a non-exhaustive list of factors for the court to consider when determining the reliability of the proffered testimony. *See Pineda*, 520 F.3d at 247-48.

"Finally, Rule 702 requires that the expert testimony must fit the issues in the case;" that is, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of

fact." *Schneider*, 320 F.3d at 404. "In assessing whether an expert's proposed testimony 'fits,' we are asking 'whether [the] expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (citing *Daubert*, 509 U.S. at 591).

## DISCUSSION

Defendants contend that Dr. Werner's opinion, as it pertains to damages, should be stricken since it is neither reliable nor fit. The crux of their argument is since Dr. Werner's proffered methodology does not isolate Aeterna's purported misrepresentations from other factors that affected Aeterna's price, it is unreliable. Plaintiffs respond that, at this stage of litigation, a detailed damages model is not required. The Court agrees.

In his report, Dr. Werner generally explains that out-of-pocket damages can be calculated on a per share basis for the entire class. (Werner Report at ¶ 141). However, at his deposition, Dr. Werner conceded that his damages report was essentially "cut and pasted" from a report prepared for another matter, and that he had yet to prepare either a damages or loss causation analysis. (ECF No. 105-7, "Werner Deposition" at 92-94). This being said, as Dr. Werner acknowledged in his report, to conduct such analyses "requires the full development of the record," which was not available to him. (*Id.*). As such, Dr. Werner's report provides a methodological framework for how he would assess damages. (*Id.*). First, Dr. Werner would perform an event study that assessed Aeterna's stock prior before and after Aterna's corrective disclosure on November 6, 2014, when it announced that the FDA denied their NDA. The use of an event study to assess the materiality of damages has been generally accepted by courts. *See In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 254 (D.N.J. 2000). Second, after completing the event study, Dr. Werner proposes constructing an inflation ribbon, which would indicate how much artificial inflation, caused by the

alleged misrepresentations and omissions, was reflected in the price of Aeterna Stock. (Werner Report at ¶ 142). To do this, Dr. Werner would work chronologically backwards from the final corrective disclosure to the beginning of the Class Period. (*Id.*). Finally, the "per share damages would be calculated as the difference between the inflation on the date shares were purchased and the inflation on the date those same shares were subsequently sold." (*Id.*). The use of a "back-casting" methodology within a related case study has also been generally accepted. *See Ludlow v. BP, PLC*, 800 F.3d 674, 684 (5th Cir. 2015).

Here, the Court finds Defendants' motion premature. At this stage of litigation, Plaintiffs are not required to produce a detailed damages model. *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)); *see also City of Sterling Heights Gen. Employee's Ret. Sys. v. Prudential Fin., Inc.*, No. 12-5275, 2015 U.S. Dist. LEXIS 115287, at *20, 34-36 (D.N.J. Aug. 31, 2015) (citing *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 373-75 (3d Cir. 2015)). Nevertheless, the Court notes that the exact methodology proffered by Dr. Werner was recently approved in *In re Silver Wheaton Corp. Sec. Litig.*, No. 15-5146, 2017 U.S. Dist. LEXIS 72787, at *39-44 (C.D. Ca. May 11, 2017). As such, for the foregoing reasons, Defendants' motion is denied without prejudice and may be reasserted after discovery has ended and an amended report is submitted.

### ORDER

IT IS on this 28 day of February, 2018,

ORDERED that Defendants' Motion to Strike in part the declarations and opinions of Dr. Werner (ECF No. 113) is DENIED without prejudice.

PETER G. SHERIDAN, U.S.D.J.